# IN THE CIRCUIT COURT FOR THE MONTGOMERY COUNTY, TENNESSEE
## AT CLARKSVILLE

EVA MANGUS,           )
     Petitioner,       )
                   )

v.                   )        **DOCKET NO: CC-25-CV-1304**
                   )

NATHAN MANGUS WOODCOCK,  )     **JUDGE: KATHRYN OLITA**
     Respondent.    )

### FINAL DECREE

This cause came to be heard on the 7th day of November 2025 at 9:00 a.m. before the Honorable Kathryn Olita, Montgomery County Circuit Court Judge, upon the Bill of Complaint entered against the Respondent, Nathan Mangus Woodcock, and it appears to the Court:

That the Petitioner, Eva Mangus, should be awarded an Absolute Divorce from the Respondent, Nathan Mangus Woodcock, on the grounds of irreconcilable differences and both parties are restored to all the rights and privileges of an unmarried person.

That the Marital Dissolution Agreement entered into between the parties on the 22nd day of July 2025, is fair and equitable and the same is adopted and incorporated herein.

That the Agreed Permanent Parenting Plan entered into between the parties on the 22nd day of July 2025, by both the Husband and the Wife, is fair and equitable and the same is adopted and incorporated herein.

It further appears to the Court that the Marital Dissolution Agreement and Permanent Parenting Plan entered into between the parties and filed with this Honorable Court on the 24th day of July 2025, is as follows, to-wit:

NOTHING FOLLOWS ON THIS PAGE

EVA MANGUS,
    Petitioner,

v.

NATHAN MANGUS WOODCOCK,
    Respondent.

DOCKET NO: CC25CV1304

JUDGE: Kathryn Olita

## MARITAL DISSOLUTION AGREEMENT

This Agreement is made between the Petitioner, EVA MANGUS, hereinafter called "Wife", and the Respondent, NATHAN MANGUS WOODCOCK, hereinafter called "Husband".

## WITNESSETH:

WHEREAS, the Parties hereto are Husband and Wife, and are experiencing certain marital difficulties, and each believes that there are Irreconcilable Differences between them, and as a result of the differences, the Wife has filed suit for an Absolute Divorce against the Husband in this Honorable Court for Montgomery County, Tennessee, said civil action being filed in Montgomery County, Tennessee which is the residence of both the Wife and the Husband.

WHEREAS, the Parties were married on December 09, 2011, in Papillion, Nebraska, and there are three (3) minor children of this marriage.

WHEREAS, The Parties understand and agree that this Agreement will be presented to the Court for approval and incorporation in the Final Decree of Divorce, and that it will be attached in its entirety in the Final Decree of Divorce.

WHEREAS, it is the intent of the Parties that their marriage be terminated on the grounds of Irreconcilable Differences, pursuant to Tennessee Code Annotated, Section 36-4-101 (14), and this

Marital Dissolution Agreement satisfies the provisions of Tennessee Code Annotated, Section 36-4-103.

WHEREAS, it is the desire of the Parties hereto to make an equitable, complete and final settlement of their property rights concerning property now owned by them, and the property which may hereinafter be acquired by either of them.

NOW, THEREFORE, the Parties hereto, in consideration of the promises and mutual covenants and agreements made herein, do mutually agree as follows:

1. **CONSIDERATION.** The consideration for this Agreement is the mutual promises and agreements set forth below.

2. **CHILDREN.** There three (3) minor children of this marriage, to wit: █████████

3. **PERSONAL PROPERTY.** The Parties have heretofore divided their personal property to their mutual satisfaction. All furniture, furnishings and personal effects presently in the possession of the Husband shall be his sole and separate property from the Wife unless otherwise noted herein. Said property shall be the sole and separate property of the Husband and any interest Wife may have in said property, by virtue of marriage or otherwise, is hereby divested from Wife and vested in Husband. All furniture, furnishings and personal effects presently in the possession of the Wife shall be her sole and separate property from the Husband unless otherwise noted herein. Any interest Husband may have in said property is hereby divested from Husband and vested in Wife.

4. **REAL PROPERTY.** The Parties own real property located at 2301 Colston Drive, Clarksville, TN 37042. This property shall be sold at a price suggested by the real estate agent. Until

_Wife's Initials_

_Husband's Initials_

the property is sold, Wife will have exclusive right to live in the residence. Husband shall be responsible for the mortgage, including taxes and insurance, and utilities and maintenance. Upon the sale of the property, the Parties will split the proceeds equally after the payment of the mortgage and associated sales fees. Neither party shall cause a lien to be placed on the property; in the event a lien, be placed on the property, that party shall be responsible for the lien and any costs to remove the lien.

5.    **DEBTS.** The parties have separated their debt. Except as otherwise stated herein, the Husband will pay and continue to pay all debts that are in his name and shall indemnify, defend, and hold the Wife harmless on any other such debt. Except as otherwise stated herein, the Wife shall pay and continue to pay all debts that are in her name and shall indemnify, defend, and hold the Husband harmless on any other such debt. Each Party shall be responsible for her or his own debts incurred from and after the date of this agreement, and each shall hold the other harmless from any loss due to the failure of the responsible Party to meet such obligations.

Pursuant to the provisions of T.C.A. § 36-4-134 the parties are advised and understand the provisions of this marital dissolution agreement and any decree of divorce in which it may be incorporated does not necessarily affect the ability of a creditor to proceed against a party or a party's property, even though the party is not responsible under the terms of the decree for an account, any debt associated with an account or any debt. It may be in the party's best interest to cancel, close or freeze any jointly held accounts.

6.    **IRS.** The parties agree that each shall file a separate tax return for the 2025 tax year and each shall be solely responsible for the payment of any federal tax owed on their separate returns for the 2025 tax year and each shall solely receive any federal income tax refund on their separate returns for the 2025 tax year. The Parties have filed joint tax returns in the past and agree to hold each other harmless for any liability that might hereafter arise as result of the conduct of one party in

_Wife's Initials_

_Marital Dissolution Agreement_
_Page 3 of 9_

_Husband's Initials_

Case 3:25-ap-90149    Doc 1-1    Filed 12/23/25    Entered 12/23/25 06:25:23    Desc
Exhibit Exhibit A - Final Decree    Page 4 of 25

conjunction with the return. The party at fault agrees to pay the taxes, fines, penalties, interests, attorney fees, and accountant fees incurred by the other party. Each party agrees to notify the other party immediately upon learning of a scheduled audit and to provide the other party with forms and documents needed to prepare their representation in such matter.

7. **RETIREMENT.** The Husband waives all rights, title and interest in the Wife's pension(s) or other retirement to which he is currently entitled or may become entitled, including any 401(K), IRA, or other type of deferred compensation. The Wife waives all rights, title and interest in the Husband's pension(s) or other retirement to which she is currently entitled or may become entitled, including any 401(K), IRA, or other type of deferred compensation

8. **FINANCIAL ACCOUNTS.** Any and all accounts held within the name of Husband shall be vested solely in Husband, and Wife shall be divested of any interest she may have in and to said account(s) including such rights, title, and interest that the Wife might have/hold by virtue of this marriage. Any and all funds existing, or to accrue in such account(s), shall solely belong to Husband, free and clear of any interest of the Wife.

Any and all accounts held within the name of Wife shall be vested solely in Wife, and Husband shall be divested of any interest he may have in and to said account(s) including such rights, title, and interest that the Husband might have/hold by virtue of this marriage. Any and all funds existing, or to accrue in such account(s), shall solely belong to Wife, free and clear of any interest of the Husband.

9. **ALIMONY.** The husband shall pay to the wife $400.00 per month in Alimony *in Futuro*, and the Parties agree this alimony shall be terminable upon death or remarriage.

10. **EXECUTION OF DOCUMENTS.** Both Parties agree to execute any and all documents of any nature necessary to effectuate the terms of this agreement to include but not be

*Wife's Initials*

*Marital Dissolution Agreement*
*Page 4 of 9*

*Husband's Initials*

Case 3:25-ap-90149   Doc 1-1   Filed 12/23/25   Entered 12/23/25 06:25:23   Desc
Exhibit Exhibit A - Final Decree   Page 5 of 25

limited to: deeds, bank accounts, vehicle title or registration documents, investment or retirement account documents, credit card or loan, other loan documents. Documents shall be executed and returned within a reasonable time of production of same.

11. **FUTURE MONETARY OBLIGATIONS**: Following the execution of this Marital Dissolution Agreement each Party shall be solely responsible for his/her individual living and financial obligations. Whenever one Party is required by the terms of this Agreement to assume full responsibility for payment of certain debts and/or indemnify and hold the other Party harmless from any liability therefrom, such obligation shall be deemed to be a support obligation pursuant to 11 U.S.C. 523(a)(5), which is not dischargeable in Bankruptcy as to the other Party.

The Parties acknowledge that neither of them are relying upon any tax advice from his or her respective attorney, and that said attorneys have expressed no expertise regarding the tax ramifications or tax consequences arising out of this Agreement. Each of the Parties have been advised by his or her attorney to seek tax counseling regarding the consequences of this Agreement from their own accountant or tax attorney, and each of the Parties acknowledges that he or she has had an opportunity to do.

12. **COURT COSTS.** Any costs of court incurred as a result of the pending action for absolute divorce have been paid.

13. **ATTORNEY'S FEES.** It is agreed by and between the Parties that each party shall pay their own attorney's fees for representation in this matter.

14. **WIFE'S MAIDEN NAME MAY BE RESTORED.** The parties agree that upon any Court of competent jurisdiction's granting a divorce between the parties, the Wife shall have the right to have returned to her the name of "Eva Steinbruck".

_Wife's Initials_

_Marital Dissolution Agreement_
_Page 5 of 9_

_Husband's Initials_

Case 3:25-ap-90149    Doc 1-1    Filed 12/23/25    Entered 12/23/25 06:25:23    Desc
Exhibit Exhibit A - Final Decree    Page 6 of 25

15. **DIVORCE DECREE.** The parties desire that this Agreement be incorporated as a part of any final decree of divorce that may hereinafter be entered with this Honorable Court for Montgomery County, Tennessee, or in any other court having appropriate jurisdiction of the parties and to that end agree that it shall be submitted to the court for its ratification and approval.

16. **MEDICAL INSURANCE:** Unless otherwise stated in this Agreement, each Party shall be solely responsible for maintaining his or her own medical insurance benefits. Each spouse hereby acknowledges by signing this Agreement that the other spouse has notified them pursuant to T.C.A. 36-4-133.1.1 that any medical insurance coverage maintained through a group medical insurance plan for the other spouse will terminate upon the divorce being final. By signing this Agreement the spouses both acknowledge:

a) The Wife is not currently covered by a health insurance policy belonging to the Husband.

b) The Husband is not currently covered by a health insurance policy belonging to the Wife.

17. **ENFORCEMENT.** In the event that it becomes necessary for either party to bring a court action to assist in the enforcement of this Agreement, and the Court finds that one of the parties has violated the terms of this Agreement, the parties agree that any order to enforce compliance with the terms of this Agreement shall include the expenses of litigation including attorney's fees assessed against the violating party.

18. **RESIDENCY, SERVICE OF PROCESS & PERSONAL JURISDICTION.** The parties acknowledge that Respondent is a Tennessee resident. Neither personal service of process nor service of process by publication shall be required. The signing of this Marital Dissolution Agreement by both parties before a notary public shall be in lieu of service of process and shall constitute a

*Marital Dissolution Agreement*
*Page 6 of 9*

Wife's Initials

Husband's Initials

Case 3:25-ap-90149    Doc 1-1    Filed 12/23/25    Entered 12/23/25 06:25:23    Desc
Exhibit Exhibit A - Final Decree    Page 7 of 25

general appearance before the Court, which shall give the Court personal jurisdiction over the Respondent for the purpose of granting a divorce on the ground of irreconcilable differences.

19.   **ENTIRE AGREEMENT.** This Agreement constitutes the entire understanding of the parties. It supersedes any and all prior agreements between them. There are no representations or warranties other than those expressly herein set forth.

20.   **VOLUNTARY.** It is understood and agreed by and between the parties that this Agreement is entered into without any undue influence, fraud, coercion or misrepresentation or for any reason not herein stated. Each party acknowledges that they have read this Agreement, that it is fair and equitable and that it is being entered into voluntarily. Each party agrees to abide by the provisions of this Agreement.

21.   **LAW USED.** This Agreement shall be construed and governed in accordance with the laws of the State of Tennessee.

22.   **PARTIAL INVALIDITY.** If any provisions of this Agreement are held to be invalid or unenforceable, it shall not affect the validity of any other provision.

23.   **CAPTIONS.** The use of captions is intended to make this Agreement more readable. The captions are not intended to limit the scope of any paragraph.

24.   **MODIFICATIONS.** The parties understand that this Agreement is intended to be incorporated into a court order for a divorce. Any modification of the Agreement before the divorce is entered shall be in writing, signed by both parties and filed with the Court prior to the final hearing. Any modification of the Agreement after the divorce decree is entered shall also be made in writing, signed by both parties, and a copy shall be sent to the Court with the Court file number written at the top.

_Wife's Initials_

_Marital Dissolution Agreement_
_Page 7 of 9_

_Husband's Initials_

Case 3:25-ap-90149   Doc 1-1   Filed 12/23/25   Entered 12/23/25 06:25:23   Desc
Exhibit Exhibit A - Final Decree   Page 8 of 25

25.   **FULL AND FINAL SETTLEMENT:** Both the legal and practical effects of this agreement in each and every respect and the financial status of the Parties is understood by both Parties, and both Parties acknowledge that the Marital Dissolution Agreement is fair and is not the result of any fraud, duress, or undue influence exercised by either Party upon the other, or by any other person or persons upon either, and they further agree that this agreement contains the entire understanding of the Parties, there being no representations, promises, warranties, covenants, or undertakings other than those expressly set forth herein, and this Marital Dissolution Agreement is a full and final settlement between the Parties of their respective rights and responsibilities to each other, and a complete distribution and division of their respective interest in and to the property of the other.

Each Party hereby waives and relinquishes to the other, all rights or claims which each may have or hereafter acquire under the law of any jurisdiction with respect to the other's property, including without limitation, dower, courtesy, statutory allowance, homestead rights, right to take against the will of the other, inheritance, descent or distribution, or right to act as administrator or executor of the other's estate except as provided by the terms of this agreement. This agreement applies to all property now owned by the Wife and the Husband, individually or jointly, or any property that either of them may acquire in the future. This agreement may be altered, cancelled or amended only in writing signed by each of the Parties. This agreement shall be binding on the heirs, executors or assigns of the Parties. It is agreed by and between the Parties that each Party shall be free from interference, authority and control, direct or indirect, by the other as fully as if he or she were single and unmarried.

_Wife's Initials_

_Marital Dissolution Agreement_
_Page 8 of 9_

_Husband's Initials_

Case 3:25-ap-90149   Doc 1-1   Filed 12/23/25   Entered 12/23/25 06:25:23   Desc
Exhibit Exhibit A - Final Decree   Page 9 of 25

_EVA MANGUS_

STATE OF TENNESSEE )
COUNTY OF MONTGOMERY )

Personally appeared before me a Notary Public in and for the aforesaid State and County the within named EVA MANGUS, with whom I am personally acquainted, (or upon sufficient evidence provided), and who acknowledged that she executed the within instrument for the purposes therein contained.

WITNESS my hand and official seal this the 22nd day of July, 2025.

My Commission Expires: 7/14/27

_Donna Windham_
NOTARY PUBLIC

_NATHAN MANGUS WOODCOCK_

STATE OF TENNESSEE)
COUNTY OF MONTGOMERY)

Personally appeared before me a Notary Public in and for the aforesaid State and County the within named NATHAN MANGUS WOODCOCK, with whom I am personally acquainted (or upon sufficient evidence provided), and who acknowledged that he executed the within instrument for the purposes therein contained.

WITNESS my hand and official seal this the 22nd day of July, 2025.

My Commission Expires: 7/14/27

_Donna Windham_
NOTARY PUBLIC

(Notary Seal: DONNA MICHELLE WINDHAM, STATE OF TENNESSEE, NOTARY PUBLIC, MONTGOMERY COUNTY)

# CIRCUIT

| STATE OF TENNESSEE | COURT | | MONTGOMERY COUNTY |
|---|---|---|---|
| **PERMANENT PARENTING PLAN ORDER** **AGREED** | | | DOCKET # CC25CV1304 JUDGE Kathryn Olita |
| **PLAINTIFF/MOTHER** **EVA MANGUS** | | **DEFENDANT/FATHER** **NATHAN MANGUS WOODCOCK** | |

The mother and father will behave with each other and each child so as to provide a loving, stable, consistent and nurturing relationship with the child even though they are divorced. They will not speak badly of each other or the members of the family of the other parent. They will encourage each child to continue to love the other parent and be comfortable in both families.

This plan is a new plan.



| Child's Name | Date of Birth |
|---|---|
| | |

## I.    RESIDENTIAL PARENTING SCHEDULE

### A.    RESIDENTIAL TIME WITH EACH PARENT

The Parenting Plan must designate the parent with whom the child is scheduled to reside a majority of the time as the Primary Residential Parent of the child(ren). The designation shall not affect either parent's rights and responsibilities under the Parenting Plan.

The Primary Residential Parent is the Mother.

Under the schedule set forth below, each parent will spend the following number of days with the children:

Mother 312 days                     Father 53 days

### B.    DAY-TO-DAY SCHEDULE

The mother shall have responsibility for the care of the child or children except at the following times when the other parent shall have responsibility: from 6pm on Friday to 6pm on Sunday every other week.

This parenting schedule begins upon both parties' signatures on this parenting plan.

### C.    HOLIDAY SCHEDULE AND OTHER SCHOOL FREE DAYS

RECEIVED  JUL 24 2025

*Indicate if child or children will be with parent in ODD or EVEN numbered years or EVERY year:*

| | MOTHER | FATHER |
|---|---|---|
| Easter Day | DAY – TO DAY SCHEDULE APPLIES | DAY – TO DAY SCHEDULE APPLIES |
| Mother's Day | EVERY | |
| Memorial Day (if no school) | DAY – TO DAY SCHEDULE APPLIES | DAY – TO DAY SCHEDULE APPLIES |
| Father's Day | | EVERY |
| July 4th* | DAY – TO DAY SCHEDULE APPLIES | DAY – TO DAY SCHEDULE APPLIES |
| Labor Day | DAY – TO DAY SCHEDULE APPLIES | DAY – TO DAY SCHEDULE APPLIES |
| Halloween** | DAY – TO DAY SCHEDULE APPLIES | DAY – TO DAY SCHEDULE APPLIES |
| Thanksgiving Break*** | DAY – TO DAY SCHEDULE APPLIES | DAY – TO DAY SCHEDULE APPLIES |

A holiday shall begin at 6:00 p.m. on the night preceding the holiday and end at 6:00 p.m. the night of the holiday, unless otherwise noted here:
*July 4th shall begin at 9am on July 4th until 9am on July 5th.
**Halloween shall begin at 9am on October 31st until 9am on November 1st.
*** Thanksgiving Break shall be defined as the date and time school is dismissed for the Thanksgiving holiday and shall end at 6:00 p.m. the night before school resumes.
This holiday schedule and other school free days shall supersede the Day-To-Day Schedule and other such vacations.

Following the conclusion of the holiday, the parties shall resume the day-to-day schedule as if it was uninterrupted.

**D.    FALL VACATION** (*If applicable*)

The day-to-day schedule shall apply.

**E.    WINTER (CHRISTMAS) VACATION**

The day-to-day schedule shall apply.

**F.    SPRING VACATION** (*If applicable*)

The day-to-day schedule shall apply.

**G.    SUMMER VACATION**

The day-to-day schedule shall apply.

## H.    TRANSPORTATION ARRANGEMENTS

The place of meeting for the exchange of the child or children shall be: at the residence of the Children.

If a parent does not possess a valid driver's license, he or she must make reasonable transportation arrangements to protect the child or children while in the care of that parent.

## I.    OTHER

The following special provisions apply:

The parties understand the importance in co-parenting and being flexible in visitation times due to other obligations (i.e. work, travel, or other family commitments). The parties may change or alter this parenting plan by an agreement in writing. Changes can be temporary, on a case-by-case basis, or until further notice; however, if the parties have not specified the change will be presumed to be a one time alteration.

## II.    DECISION-MAKING

## A.    DAY-TO-DAY DECISIONS

Each parent shall make decisions regarding the day-to-day care of a child while the child is residing with that parent, including any emergency decisions affecting the health or safety of a child.

## B.    MAJOR DECISIONS

Major decisions regarding each child shall be made as follows:

| | |
|---|---|
| Educational decisions | Mother |
| Non-emergency health care | Mother |
| Religious upbringing | Mother |
| Extracurricular activities | Mother |

## III.    FINANCIAL SUPPORT

## A.    CHILD SUPPORT

Father's gross monthly income is $ 6,200.00
Mother's gross monthly income is $1,300.00

1. The final child support order is as follows:

a.  The father shall pay to the other parent as regular child support the sum of $1,200.00 monthly. **The Child Support Worksheet shall be attached to this Order as an Exhibit.** This is a deviation from the Child Support Guidelines due to the transportation arrangements. The presumptive amount is $1245. This deviation best serves the minor children.

2.  Payments shall begin on the day following the execution of this document and on the first day of every month thereafter. This support shall be paid: directly to the other parent.

The parents acknowledge that court approval must be obtained before child support can be reduced or modified.

*Child Support Worksheet can be found on DHS website at http://www.state.tn.us/humanserv/is/isdocuments.html or at your local child support offices.

## B.    FEDERAL INCOME TAX EXEMPTION*

The mother is the parent receiving child support.
The Mother shall claim all three children EVERY year.
The father will furnish IRS Form 8332 to the parent entitled to the exemption by February 15 of the year the tax return is due.

## C.    PROOF OF INCOME AND WORK-RELATED CHILD CARE EXPENSES

Each parent shall send proof of income to the other parent for the prior calendar year as follows:

- IRS Forms W-2 and 1099 shall be sent to the other parent on or before    February 15.
- A copy of his or her federal income tax return shall be sent to the other parent on or before April 15 or any later date when it is due because of an extension of time for filing.
- The completed form required by the Department of Human Services shall be sent to the Department on or before the date the federal income tax return is due by the parent paying child support. *This requirement applies only if a parent is receiving benefits from the Department for a child.*

The parent paying work-related child care expenses shall send proof of expenses to the other parent for the prior calendar year and an estimate for the next calendar year, on or before February 15.

## D.    HEALTH AND DENTAL INSURANCE

---

* NOTE: The child support schedule assumptions in the guidelines (1240-2-4-.03 (6)(b) ) assume that the parent receiving the child support will get the tax exemptions for the child.

Father's Initials

Reasonable health insurance on the child or children will be: maintained by the mother.

Proof of continuing coverage shall be furnished to the other parent annually or as coverage changes. The parent maintaining coverage shall authorize the other parent to consult with the insurance carrier regarding the coverage in effect.

Uncovered reasonable and necessary medical expenses, which may include but is not limited to, deductibles or co-payments, eyeglasses, contact lens, routine annual physicals, and counseling will be paid by both parents equally. After insurance has paid its portion, the parent receiving the bill will send it to the other parent within ten days. The other parent will pay his or her share within 30 days of receipt of the bill.

If available through work, the mother shall maintain dental, orthodontic, and optical insurance on the minor child or children.

## IV. PRIMARY RESIDENTIAL PARENT (CUSTODIAN) FOR OTHER LEGAL PURPOSES

The child or children are scheduled to reside the majority of the time as designated in Section I.A. This parent is designated as the primary residential parent also known as the custodian, **SOLELY** for purposes of any other applicable state and federal laws. If the parents are listed in Section II as joint decision-makers, then, for purposes of obtaining health or other insurance, they shall be considered to be joint custodians. THIS DESIGNATION DOES NOT AFFECT EITHER PARENT'S RIGHTS OR RESPONSIBILITIES UNDER THIS PARENTING PLAN.

## V. DISAGREEMENTS OR MODIFICATION OF PLAN

Should the parents disagree about this Parenting Plan or wish to modify it, they must make a good faith effort to resolve the issue by the process selected below before returning to Court. *Except for financial support issues including child support, health and dental insurance, uncovered medical and dental expenses, and life insurance,* disputes must be submitted to: Mediation by a neutral party chosen by the parents or the Court.

The costs of this process may be determined by the alternative dispute process or may be assessed by the Court based upon the incomes of the parents. It must be commenced by notifying the other parent and the Court by written request sent via certified mail OR by properly served summons with a new petition.

In the dispute resolution process:
  A. Preference shall be given to carrying out this Parenting Plan.
  B. The parents shall use the process to resolve disputes relating to implementation of the Plan.

Parenting Plan

Mother's Initials _____    Father's Initials

Case 3:25-ap-90149    Doc 1-1    Filed 12/23/25    Page 15 of 9    Entered 12/23/25 06:25:23    Desc
Exhibit Exhibit A - Final Decree    Page 15 of 25

C. A written record shall be prepared of any agreement reached, and it shall be provided to each parent.
D. If the Court finds that a parent willfully failed to appear without good reason, the Court, upon motion, may award attorney fees and financial sanctions to the prevailing parent.

## VI.    RIGHTS OF PARENTS

Under T.C.A. § 36-6-101 of Tennessee law, both parents are entitled to the following rights:

(1) The right to unimpeded telephone conversations with the child at least twice a week at reasonable times and for reasonable durations. The parent exercising parenting time shall furnish the other parent with a telephone number where the child may be reached at the days and time specified in a parenting plan or other court order or, where days and times are not specified, at reasonable times;

(2) The right to send mail to the child which the other parent shall not destroy, deface, open or censor. The parent exercising parenting time shall deliver all letters, packages and other material sent to the child by the other parent as soon as received and shall not interfere with their delivery in any way, unless otherwise provided by law or court order;

(3) The right to receive notice and relevant information as soon as practicable but within twenty-four (24) hours of any hospitalization, major illness or injury, or death of the child. The parent exercising parenting time when such event occurs shall notify the other parent of the event and shall provide all relevant healthcare providers with the contact information for the other parent;

(4) The right to receive directly from the child's school any educational records customarily made available to parents. Upon request from one parent, the parent enrolling the child in school shall provide to the other parent as soon as available each academic year the name, address, telephone number and other contact information for the school. In the case of children who are being homeschooled, the parent providing the homeschooling shall advise the other parent of this fact along with the contact information of any sponsoring entity or other entity involved in the child's education, including access to any individual student records or grades available online. The school or homeschooling entity shall be responsible, upon request, to provide to each parent records customarily made available to parents. The school may require a written request which includes a current mailing address and may further require payment of the reasonable costs of duplicating such records. These records include copies of the child's report cards, attendance records, names of teachers, class schedules, and standardized test scores;

(5) Unless otherwise provided by law, the right to receive copies of the child's medical, health or other treatment records directly from the treating physician or healthcare provider. Upon request from one parent, the parent who has arranged for such treatment or health care shall provide to the other parent the name, address, telephone number and other contact information of the

physician or healthcare provider  The keeper of the records may require a written request including a current mailing address and may further require payment of the reasonable costs of duplicating such records. No person who receives the mailing address of a requesting parent as a result of this requirement shall provide such address to the other parent or a third person;

(6) The right to be free of unwarranted derogatory remarks made about such parent

or such parent's family by the other parent to or in the presence of the child;

(7) The right to be given at least forty-eight (48) hours notice, whenever possible, of

all extracurricular school, athletic, church activities and other activities as to which parental participation or observation would be appropriate, and the opportunity to participate in or observe them. The parent who has enrolled the child in each such activity shall advise the other parent of the activity and provide contact information for the person responsible for its scheduling so that the other parent may make arrangements to participate or observe whenever possible, unless otherwise provided by law or court order;

(8) The right to receive from the other parent, in the event the other parent leaves the state with the minor child or children for more than forty-eight (48) hours, an itinerary which shall include the planned dates of departure and return, the intended destinations and mode of travel and telephone numbers. The parent traveling with the child or children shall provide this information to the other parent so as to give that parent reasonable notice; and

(9) The right to access and participation in the child's education on the same bases that are provided to all parents including the right of access to the child during lunch and other school activities; provided, that the participation or access is legal and reasonable; however, access must not interfere with the school's day-to-day operations or with the child's educational schedule.

## VII.  NOTICE REGARDING PARENTAL RELOCATION

The Tennessee statute (T.C.A. § 36-6-108) which governs the notice to be given in connection with the relocation of a parent reads in pertinent part as follows:

(a) After custody or co-parenting has been established by the entry of a permanent parenting plan or final order, if a parent who is spending intervals of time with a child desires to relocate outside the state or more than fifty (50) miles from the other parent within the state, the relocating parent shall send a notice to the other parent at the other parent's last known address by registered or certified mail. Unless excused by the court for exigent circumstances, the notice shall be mailed not later than sixty (60) days prior to the move.  The notice shall contain the following:

(1) Statement of intent to move;

(2) Location of proposed new residence;

(3) Reasons for proposed relocation; and

(4) Statement that absent agreement between the parents or an objection by the non-relocating parent within thirty (30) days of the date notice is sent by registered or certified mail in accordance with subsection (a), the relocating parent will be permitted to do so by law.

(b) Absent agreement by the parents on a new visitation schedule within thirty (30) days of the notice or upon a timely objection in response to the notice, the relocating parent shall file a petition seeking approval of the relocation. The non-relocating parent has thirty (30) days to file a response in opposition to the petition. In the event no response in opposition is filed within thirty (30) days, the parent proposing to relocate with the child shall be permitted to do so.

(c) (1) If a petition in opposition to relocation is filed, the court shall determine whether relocation is in the best interest of the minor child.

## VIII.   PARENT EDUCATION CLASS

This requirement has been fulfilled by both parents.

Failure to attend the parent education class within 60 days of this order is punishable by contempt.

---

**Under penalty of perjury, we declare that this plan has been proposed in good faith and is in the best interest of each minor child and that the statements herein and on the attached child support worksheets are true and correct. (A notary public is required if this is a proposed plan by one parent. A notary public is required if this is an agreed plan by both parents.)**

Mother _____   Date and Place Signed   7/22/25   Clarksville TN

Sworn to and subscribed before me this the 22nd day of July 20 25.

My Commission Expires: 7/14/27   _____   Notary Public

Father _____   Date and Place Signed   7/22/25   Clarksville

Sworn to and subscribed before me this the 22nd day of July 20 25.

My Commission Expires: 7/14/27   _____   Notary Public

Mother's Initials _____

Father's Initials _____

Parenting Plan
Page 8 of 9

**APPROVED FOR ENTRY:**

CRYSTAL D. WILKERSON, BPR 031823
324 Academy Ave
Clarksville, Tennessee 37040
Phone:(931)809-0207 | Fax:(931)933-7545
CRYSTAL@CRYSTALWILKERSONLAW.COM

*Note: The judge or chancellor may sign below or, instead, sign a Final Decree or a separate Order incorporating this plan.*

**FINDING OF BEST INTEREST**: Upon this Court's review of the Parenting Plan, the Court finds the Parenting Plan: (i) makes adequate and sufficient provision for the custody and maintenance of the parties' minor child or children; (ii) provide reasonable allocation of parenting time in accordance with Tenn. Code Ann. § 36-6-106(a); (iii) properly allocates parenting responsibility pursuant to Tenn. Code Ann. § 36-6-407; and (iv) is in the best interest of the parties' minor child or children.

COURT COSTS (If applicable): Court costs, if any, are taxed as follows: _____.

It is so ORDERED this the __25__ day of __July__, 2025.

/s/ Kathryn Olita
_____
Judge or Chancellor

## Part I. Identification

|  |  |  | PRP | ARP | SPLIT |
|---|---|---|---|---|---|
| Indicate the status | Name of Mother or Parent 1: | EVA MANGUS | X | | |
| of each parent or | Name of Father or Parent 2: | NATHAN MANGUS WOODCOCK | | X | |
| caretaker by placing | Name of non-parent Caretaker: | | | | |
| an "X" in the | TCSES case #: | | | | |
| appropriate column | Docket #: | | | | |
| | Court name: | | | | |

| Name(s) of Child(ren) | Date of Birth | Days with Mother or Parent 1 | Days with Father or Parent 2 | Days with Caretaker |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## Part II. Adjusted Gross Income

|  |  |  | Mother or Parent 1 Column A | Father or Parent 2 Column B | Nonparent Caretaker Column C |
|---|---|---|---|---|---|
| | 1 | Monthly Gross Income | $ 1,300.00 | $ 6,200.00 | |
| | 1a | Federal benefit for child | | | |
| Use Credit Worksheet | 1b | Self-employment tax paid | | | |
| to calculate line items | 1c | Subtotal | 1,300.00 | 6,200.00 | |
| 1d - 1e | 1d | Credit for in-home children | 0.00 | 0.00 | |
| | 1e | Credit for not-in-home children | 0.00 | 0.00 | |
| | 2 | Adjusted Gross Income (AGI) | $ 1,300.00 | $ 6,200.00 | |
| | 2a | Combined Adjusted Gross Income | $7,500.00 | | |
| | 3 | Percentage Share of Income (PI) | 17% | 83% | |
| | 3a | Means Tested Income only (Y/N) | N | N | |

## Part III. Parents' Share of BCSO

| | | | | | | |
|---|---|---|---|---|---|---|
| | 4 | BCSO allotted to primary parent's household | $ | 1437.00 | $ 0.00 | $ 0.00 |
| | 4a | Share of BCSO owed to primary parent | $ | 0.00 | $ 1192.71 | |
| | 4b | BCSO if Self Support Reserve (SSR) is applied | | N/A | N/A | |
| | 5 | Each parent's average parenting time | | N/A | 53 | |
| | 5a | Parenting Time Adjustment (68 or less days) | | N/A | 52.28 | |
| | 5b | Adjusted BCSO (68 or less days) | | N/A | 1244.99 | |
| | 6a | Parenting Time Adjustment (92 or more days) | | N/A | N/A | |
| | 6b | Adjusted BCSO (92 or more days) | | N/A | N/A | |
| | 7 | Calculated BCSO | $ | 0.00 | $ 1,244.99 | |

## Part IV. Additional Expenses

| | | | Mother or Parent 1 \ Column A | Father or Parent 2 \ Column B | Nonparent Caretaker \ Column C |
|---|---|---|---|---|---|
| | 8a | Children's portion of health insurance premium | $ | $ | $ |
| | 8b | Recurring uninsured medical expenses | $ | $ | $ |
| | 8c | Work-related childcare | $ | $ | $ |
| | 9 | Total additional expenses | $ 0.00 | $ 0.00 | $ 0.00 |
| | 10 | Share of additional expenses owed | $ 0.00 | $ 0.00 | |
| | 11 | Adjusted Support Obligation (ASO) | $ 0.00 | $ 1,244.99 | |

## Part V. Presumptive Child Support Order

| | | | OBLIGATION | |
|---|---|---|---|---|
| | 12 | Presumptive Child Support Order (PCSO) | $ 0.00 | $ 1,245.00 |

* Enter the difference between the greater and smaller numbers from Line 11 except in non-parent caretaker situations.

Current Order Flat %?    N    (N / Y)

**Modification of Current Child Support Order**

| | | | | |
|---|---|---|---|---|
| 13a | Current child support order amount for the obligor parent | $ | $ | |
| 13b | Amount required for significant variance to exist | $ 0.00 | $ 0.00 | |
| 13c | Actual variance between current and presumptive child support orders | $ 0.00 | $ 0.00 | |

## Part VI. Deviations and FCSO

**Deviations must be substantiated by written findings in the Child Support Order**

| | | | | |
|---|---|---|---|---|
| 14 | Deviations (Specify): | $ | $ | -45.00 |
| | This is a deviation from the Child Support Guidelines due to the transportation arrangements. The presumptive amount is $1245. This deviation best serves the minor children. | | | |
| 15 | Adjusted for Minimum Order (Y/N) | N | N | |
| 16 | Final Child Support Order (FCSO) | $ 0.00 | $ 1,200.00 | |
| 17 | FCSO adjusted for Federal benefit, Line 1a, Obligor's column. | $ 0.00 | $ 1,200.00 | |

**Comments, Calculations, or Rebuttals to Schedule**

## Preparer's Use Only

Name:                                     Date:    7/22/2025

Title:

**ISSS - Income Shares Summary Screen**

***Remember to click button any time you have made changes to previous sheets

| PECSSXXX | | Inquire | Add | Update | | | | | 00:00:00 | |
|---|---|---|---|---|---|---|---|---|---|---|
| XXXXXXX | | CSES - INCOME SHARES SUMMARY SCREEN (ISSS) | | | | | | 00-00-0000 | | |

CASE ID        TYPE   X  /  X   STATUS  A   CLASS  XXX  /         7/?

NCP :    XXXXXXXXXXXXXXX        ID  000000000    RTD      XX     OFFICE  000

CP :     XXXXXXXXXXXXXXX        ID  000000000    RTD      XX     USERID  XXXXXX

DOCKET             +# OF CHILDREN FOR THIS ORDER        3      NOTEPAD  N

PARENTING TYPE    ST - STANDARD PARENTING         WORKSHEET DATE     7/22/2025.

                                                                   MORE +

| | | | | MOTHER | | FATHER | NP CTAKER |
|---|---|---|---|---|---|---|---|
| PI MOTHER | 17% | PI FATHER | 83% | | | | |
| EACH PARENT'S AVERAGE PARENTING TIME | | | | 0 | | 53 | |
| GROSS INCOME SUBTOTAL | | | | 1300.00 | | 6200.00 | |
| CREDIT FOR CHILDREN | | | | 0.00 | | 0.00 | |
| CHILDREN'S PORTION INS | | | | 0.00 | | 0.00 | |
| RECURRING MEDICAL | | | | 0.00 | | 0.00 | |
| CHILDCARE_____ (P / N / B) | | | | 0.00 | | 0.00 | |
| PCSO | | | | 0.00 | | 1245.00 | |

DEVIATION  -45.00              SSA BENEFIT    0.00

FCSO       1200.00          OBLIGEE CHANGE _ (Y / N)            SV Y (Y/N)

SELF SUPPORT RESERVE ADJUSTMENT      N    (Y / N)   MEAN TESTED INCOME ONLY     N     (Y / N)

AA539 - 1 Successful INQUIRE

COMMAND ===

1 = HELP   3 = EXIT   4 = PROMPT   5 = CLER   6 = NOTE   7 = BKWD   8 = FRWD   11 = ORDR   12 = ISCS   13 = ANRF

**ISCS - Income Shares Children Screen**

| O/C | Name | | DOB | IN Home | PRP/ARP |
|---|---|---|---|---|---|
| | | | | | |

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED,** by the Court that the Petitioner is awarded an absolute divorce from the Respondent on the grounds of irreconcilable differences and that the bonds of matrimony subsisting between the Petitioner and Respondent, be and they are hereby, forever and permanently dissolved, and the parties are restored to all the rights and privileges of unmarried persons.

**IT FURTHER APPEARS** to the Court that said Marital Dissolution Agreement provides an equitable settlement of all property rights of the parties and the same is adopted and incorporated herein and shall be the Order of this Court.

**IT FURTHER APPEARS** to the Court that the Agreed Permanent Parenting Plan provides for the needs of the minor children and is in the best interest of the minor children and the same is adopted and incorporated herein and shall be the Order of this Court.

**IT FURTHER APPEARS** to the Court that the parties' addresses are Petitioner, Eva Mangus, 2301 Colston Drive, Clarksville, TN 37042 and Respondent, Nathan Mangus Woodcock, 2301 Colston Drive, Clarksville, TN 37042.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** by the Court that the Petitioner may restore to her maiden name of, Steinbruck if she so chooses.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** by the Court that each of the parties shall be responsible for their own attorney's fees.

**IT IS FURTHER ORDERED, ADJUDGED AND DECREED** that pursuant to Tenn. Code Ann. §36-4-134, Husband and Wife acknowledge that this *Final Decree of Absolute Divorce* does not necessarily affect the ability of a creditor to proceed against either of them or their property, even though he or she is not responsible under the terms of this *Marital Dissolution*

*Agreement* which is incorporated into this Parties' *Final Decree of Absolute Divorce* for an account, any debt associated with an account or any debt. **Husband and Wife acknowledge that it may be in their best interest to cancel, close or freeze any jointly held accounts.**

      **IT IS FURTHER ORDERED, ADJUDGED, AND DECREED** by the Court that each of the provisions of the aforesaid Marital Dissolution Agreement and Permanent Parenting Plan are adopted and incorporated herein as an Order of this Court and the parties are to abide by the same.

      **IT IS FURTHER ORDERED, ADJUDGED AND DECREED** by the Court that Crystal D. Wilkerson is hereby relieved as counsel for the Petitioner.

      Costs in this cause have been paid.

      **ENTERED** on this ___18___ day of ___NOV.___, 2025.

_____
**JUDGE**

APPROVED FOR ENTRY:

_____
**CRYSTAL D. WILKERSON, BPR 031823**
*Attorney for Petitioner*
324 Academy Avenue
Clarksville, TN 37040
(931) 809-0207

## CERTIFICATE OF SERVICE

      I, Crystal D. Wilkerson, hereby certify that a copy of the foregoing was forwarded to the following by fax, hand delivery, or placing same in the United States mail, postage pre-paid, on this the ___7th___ day of ___Nov.___ 2025.

Nathan Mangus Woodcock
2301 Colston Drive
Clarksville, TN 37042

_____
CRYSTAL D. WILKERSON